**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

| | |
|---|---|
| IN RE | |
| STEVEN K. BAILEY | CASE NO. 22-10013 |
| DEBTOR | CHAPTER 13 |
| REBECCA BAILEY | PLAINTIFF |
| V. | ADV. NO. 22-01001 |
| STEVEN K. BAILEY | DEFENDANT |

**MEMORANDUM OPINION GRANTING JUDGMENT TO DEFENDANT**

**I.   Introduction.**

Defendant/Debtor Steven K. Bailey and Plaintiff/Creditor Rebecca Bailey were divorced in August 2016. The family court's divorce decree set out the ex-spouses' obligations to each other. Plaintiff filed a proof of claim in Debtor's chapter 13 bankruptcy case. In this adversary proceeding, she avers that Debtor has failed to satisfy his financial obligations to her such that she is entitled to relief against him, including a judgment that Debtor's debt to her should be excepted from his discharge.

The Court previously issued a memorandum opinion and order resolving the parties' dispositive motions. [ECF No. 54.]¹ Upon entry thereof, the claims remaining in the case are (a) Plaintiff's request that the Court impose an equitable lien on certain real property awarded to Debtor in the divorce decree that remains titled in Plaintiff's name, (b) her claim to except a debt from Debtor's Chapter 13 discharge as a debt for embezzlement under § 523(a)(4),² (c) her claim

---

¹ *See also Bailey v. Bailey (In re Bailey)*, Adv. No. 22-1001, 2022 Bankr. LEXIS 2651 (Bankr. E.D. Ky. Sept. 26, 2022).

² Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Civil Procedure are referred to as "Civil Rule __." The Federal Rules of

to except a debt from Debtor's discharge as a debt obtained by fraud under § 523(a)(2)(A), and (d) her claim to except a debt from Debtor's discharge as one obtained via a divorce decree under § 523(a)(15). The Court also entered an order identifying questions it had regarding the viability of these four claims and requiring supplemental briefing to determine whether the Court could grant a judgment on the claims under Civil Rule 56(f), incorporated herein through Bankruptcy Rule 7056. [ECF No. 55.]

Plaintiff filed a supplemental brief that did not discuss her claims under § 523(a)(2)(A) or (a)(15). [ECF No. 58.] At oral argument on November 9, 2022, the Court heard Plaintiff's position concerning these two claims and advised that Debtor would be awarded a summary judgment on those claims under Civil Rule 56(f). Following oral argument and further review of the record, the Court determined that a decision could be reached as a matter of law on Plaintiff's equitable lien claim. The parties declined any further opportunity to brief the equitable lien issue. Accordingly, the Court conducted a trial on November 30, 2022, only on Plaintiff's embezzlement claim. [ECF No. 63.]³

**II.    Facts.**

The Court's prior opinion, which granted Debtor's motion for a judgment on the pleadings in part and denied Plaintiff's motion for a partial summary judgment in full, outlined pertinent facts derived from documents entered in the family court divorce case that Plaintiff attached to her initial pleading. [ECF No. 54.] The facts stated in the prior opinion are

---

Bankruptcy Procedure appear as "Bankruptcy Rule ____."

³ Plaintiff did not attend the November 30 trial due to illness. [ECF No. 69.] The Court took Debtor's testimony that day but otherwise continued the trial and instructed Plaintiff's counsel to advise by December 15, 2022, whether Plaintiff wished to put on further proof. [ECF No. 71.] As ordered, Plaintiff reported that she did not want to introduce additional testimony or other evidence. [ECF No. 75.] As Debtor's counsel questioned him at the trial, and Debtor did not wish to offer any other evidence, the Court closed the evidence on December 16, 2022, and deemed the matter submitted. [ECF No. 76.]

incorporated and taken into consideration with the additional findings from trial below to the extent they bear on Plaintiff's embezzlement claim under § 523(a)(4). In addition, the parties tendered joint stipulations prior to the trial that establish basic facts about the dissolution of the parties' marriage and the basis for the debt that is sought to be excepted from Debtor's discharge. [ECF No. 67.] That debt relates to the income of the parties' jointly owned business that Debtor did not deposit in an account during the pendency of the divorce proceedings in violation of an order of the family court. [*Id*. at 6.]

### III. Jurisdiction.

This Court has jurisdiction over this proceeding. 28 U.S.C. § 1334(a). Venue is proper in this District. 28 U.S.C. § 1409. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (I), (K), and (O). The parties consent to the Court's entry of final orders.[4]

### IV. Debtor is entitled to a summary judgment on Plaintiff's § 523(a)(2)(A) and (a)(15) claims.

The Court identified its concerns with Plaintiff's claims under § 523(a)(2)(A) and (a)(15) in a prior order. [ECF No. 55.] The Court also advised it would consider entering a summary judgment on those claims under Civil Rule 56(f) and afforded Plaintiff an opportunity to offer legal and factual support for those claims. [*Id*.] Civil Rule 56(f) provides:

> (f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:
>
>   (1) grant summary judgment for a nonmovant;
>   (2) grant the motion on grounds not raised by a party; or

---

[4] Plaintiff's complaint requested a jury trial [ECF No. 1 at 7; ECF No. 13 at 6] but Plaintiff agreed at the trial held on November 30, 2022, that she had no right to a jury trial on her § 523(a)(4) claim. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989); *Langenkamp v. Culp*, 498 U.S. 42 (1990); *Anderson v. Demis (In re Anderson)*, 98 Fed. Appx. 367 (6th Cir. 2004) ("[B]ankruptcy discharge and questions regarding dischargeability of particular debts involve issues with an equitable history for which there is no entitlement to a jury trial."), *cert. denied*, No. 03-10871, 2004 U.S. LEXIS 6363 (2004); *Mattingly v. Piccinini (In re Piccinini)*, 424 B.R. 767 (Bankr. E.D. Mich. 2010) (denying motion for reconsideration of order striking creditor's jury demand on non-dischargeability claims).

Document    Page 4 of 15

>   (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

FED. R. CIV. P. 56(f).

Plaintiff's supplement omitted any discussion of her § 523(a)(2)(A) and (a)(15) claims. [ECF No. 58.] Thus, Plaintiff abandoned the claims. *See, e.g.*, *Brown v. VHS of Mich.*, 545 F. Appx. 368, 372 (6th Cir. 2013) (explaining the "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

Alternatively, a summary judgment in Debtor's favor on these claims is warranted for the reasons stated in the Court's prior order. Plaintiff had the burden to respond to the Court's invocation of Civil Rule 56(f) by establishing her claims are legally viable and sufficient evidence exists to prove all elements of the claims. *See, e.g.*, *Ceruti v. Woodhouse (In re Woodhouse)*, Adv. Pro. No. 15-2125, 2022 Bankr. LEXIS 540, at *14 (Bankr. D. Utah March 3, 2022) ("where the Court has moved to consider summary judgment on its own under [Civil] Rule 56(f)(3) in favor of [the defendant], [the plaintiff] must come forward with evidence showing the existence of a genuine dispute regarding her claims."). Plaintiff failed to do so. The Court finds Debtor is entitled to a summary judgment in his favor on these claims because (a) the record lacks sufficient evidence to establish the elements of a claim under § 523(a)(2)(A), and (b) § 1328 does not except any debt from a chapter 13 discharge to the extent it falls under § 523(a)(15).

V.    **Debtor is entitled to a summary judgment dismissing Plaintiff's request for this Court to impose an equitable lien on real property.**

As noted above, the Court denied Plaintiff's motion for a partial summary judgment on her request that the Court impose an equitable lien on real property currently titled in her name. [ECF No. 54 at 9-11.] Plaintiff thereafter filed a supplemental brief addressing this issue, as

4

ordered. [ECF No. 58.]⁵ And, Plaintiff noted at the subsequent oral argument that her summary judgment motion also cited three bankruptcy cases involving equitable liens. [ECF No. 36.] After a review of the authority contained in Plaintiff's filings and performing further research, the Court concludes Plaintiff is not entitled to the relief requested as a matter of law. While a bankruptcy court may recognize and enforce an equitable lien granted in another proceeding, it may not impose one. *See In re Blume*, 582 B.R. 178 (Bankr. E.D. Mich. 2017).

In *Blume*, before the debtors filed their bankruptcy petition, a state divorce court had advised that "based on Michigan law, there may be grounds to impose, and the court may in the future impose, an equitable lien in favor of the [c]reditor on the [d]ebtors' real property[;]" however, the divorce court's "ultimate decision and future action on that issue would depend upon, and would have to await, the final disposition of the [c]reditor's pending [separate collections] lawsuit against the [d]ebtors[.]" *Id*. at 179. After the debtors sought bankruptcy protection, the creditor requested relief from the automatic stay under § 362 to further pursue the debtors in state court. In deciding to grant stay relief, the *Blume* court explained:

> 2. … [A]n equitable lien, if imposed by the state court in the Divorce Case, would amount to a constructive trust under Michigan law.
>
> 3. Under cases decided by the United States Court of Appeals for the Sixth Circuit, this Bankruptcy Court cannot impose a constructive trust (or an equitable lien) on the [d]ebtors' [real] Property, or on any other property of the [d]ebtors. *See XL/Datacomp, Inc. v. Wilson (In re Omegas Group., Inc.)*, 16 F.3d 1443, 1449, 1451, 1453 (6th Cir. 1994); *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 935-37 (6th Cir. 2000); *Poss v. Morris (In re Morris)*, 260 F.3d 654, 666 (6th Cir. 2001).
>
> 4. But with respect to the cases just cited, the Court interprets the *Newpower* and *Morris* cases to have clarified and narrowed the Sixth Circuit's holding in the earlier *Omegas Group* case. The Court interprets *Newpower* and *Morris* to mean that unlike the bankruptcy court, the state court could impose a constructive trust (equitable lien) on the [d]ebtors' [real] Property, which would be valid and enforceable in this bankruptcy case, if all three of the following requirements

---

⁵ Debtor's supplemental brief cited no authority bearing on Plaintiff's equitable lien request [ECF No. 59].

5

>   were met: (a) this Court first granted relief from the automatic stay to permit litigation to go forward in the state court, of the type granted by the order below; and (b) the state court decided to impose the constructive trust (equitable lien); and (c) the state court ruled that the effective date of the constructive trust (equitable lien) was, under state law, a date before June 29, 2017 (the date on which the [d]ebtors filed this bankruptcy case). (Any such action by the state court would, of course, be subject to any available rights of appeal in the state court system.)

*Id*. at 180 (footnote omitted). Thus, the bankruptcy court found cause existed to grant stay relief and allowed the creditor to ask the state court to impose an equitable lien on real property in the creditor's favor. *Id*. at 180-81. The discussion in *Blume* of the *Omegas Group*, *Newpower*, and *Morris* decisions comports with this Court's understanding of the law; that is, the Sixth Circuit has held this Court lacks authority to impose an equitable remedy, such as an equitable lien on real property, under the Bankruptcy Code under the circumstances presented.

Plaintiff's briefs do not address the three Sixth Circuit decisions discussed in *Blume*, all written after Congress enacted the current Bankruptcy Code in 1978 (eff. Oct. 1, 1979). Instead, Plaintiff's summary judgment motion cites two century old Sixth Circuit cases, *Gage Lumber Co. v. McEldowney*, 207 F. 255 (6th Cir. 1913), and *Marshall v. Roettinger*, 294 F. 158 (6th Cir. 1923), decided under the Bankruptcy Act of 1898. Both *Gage Lumber* and *Marshall* concerned whether, as a matter of equity, a court in a bankruptcy case could impose an equitable lien in a purchaser's favor on personal property which (a) the purchaser paid for prepetition, (b) the debtor-merchant manufactured prepetition, and (c) the debtor did not deliver to the purchaser prepetition. The Sixth Circuit explained the creditor in *Gage Lumber* had acquired a prepetition interest in lumber that had been stacked and segregated on the debtor's grounds for the creditor's use, evidencing "an intent to create a loan and security, as well as an ultimate sale, and so as between the parties to place the transaction outside of the ordinary category of unsecured claims." *Gage Lumber*, 207 F. at 258. Conversely, in *Marshall*, the debtor had not set aside

6

from its stock any "chino combination sets" specifically to satisfy a creditor's order such that no prepetition lien arose in the creditor's favor; the circuit court explained: "in the absence of a contract intending or purporting to create a lien, a court of equity will not, merely out of general consideration, declare a lien upon an unidentified res to the prejudice of equal equities of other creditors." *Marshall*, 294 F. at 161. Neither case is factually analogous nor explains what authority this Court has under the Bankruptcy Code to grant the relief Plaintiff requests.

Plaintiff's summary judgment motion also cites a more recent but non-binding decision in another non-analogous context. *See In re Smith*, 119 B.R. 558 (S.D. Ohio 1989). In *Smith*, a post-petition lender did not obtain bankruptcy court approval before loaning funds to chapter 11 debtors to allow them to plant crops. The bankruptcy court found the debtors' primary prepetition secured creditors had no interest in the crops and awarded the post-petition lender an equitable lien on the net proceeds of the crops. The district court affirmed on appeal, explaining:

> As noted by the court below "this is not a case where the debtor has attempted to grant a lien to a creditor in previously unencumbered property at the expense of the general creditors. The fundamental fact is that [the post-petition lender's] loan did not just preserve the bankruptcy estate, but in fact 'created' a portion of that estate." In the absence of [the post-petition lender's] loan, the estate would not have possessed the 1986 crop. Despite the failure of Debtors and [the post-petition lender] to follow the proper procedures in gaining court approval for the loan, this Court agrees with the Bankruptcy Court that it would be unjust to permit Debtors' other creditors to profit from [the post-petition lender's] mistake. This Court concludes that the Bankruptcy Court has sufficiently protected Debtors' other creditors from any potential loss on the 1986 crops by limiting [the post-petition lender's] equitable lien to "net proceeds." The only property in which [the post-petition lender] has acquired a lien is property which was "created" as a result of [the post-petition lender's] loan.

*Id*. at 565-66. The *Smith* decision is factually and procedurally off-point as the court awarded a post-petition lien connected to a post-petition loan. It also is unpersuasive as it does not identify the source of the bankruptcy court's authority to award an equitable lien to the lender.

Finally, Plaintiff's supplemental brief cites *In re D & B Electric, Inc.*, 4 B.R. 263 (Bankr. W.D. Ky. 1980),[6] contending it also supports her entitlement to an equitable lien.[7] However, the brief offers no explanation of the case, relying only on a snippet therefrom suggesting courts may award equitable liens under Kentucky law. [ECF No. 58 at 9.]

In *D & B Electric*, a subcontractor worked on two construction projects using fixtures supplied by a materialman. The subcontractor did not pay the materialman for the fixtures. The materialman did not timely file liens on the construction projects related to the fixtures. Nevertheless, the general contractors for the projects sent checks to the materialman to pay for the fixtures in exchange for the materialman's agreement to waive its right to file liens. The checks, made payable jointly to the subcontractor and the materialman, were not endorsed and cashed prepetition. After the subcontractor filed for bankruptcy protection, the bankruptcy estate's trustee and the materialman both asserted a right to the checks.

In finding the materialman had a superior interest in the checks, the bankruptcy court did not impose an equitable lien in the materialman's favor, though it explained when an equitable lien may arise under Kentucky law. *Id*. at 266-67. Instead, relying on a state statute which creates a trust protecting materialmen, the court found the funds at issue never became part of the debtor's bankruptcy estate. The court reasoned the unpaid materialman's prepetition position "causes the creation of a trust for its benefit of funds in the hands of the general contractors, thereby bypassing [the subcontractor's] estate entirely. In effect, the funds are not, nor will they

---

[6] While the *D & B Electric* decision post-dates the Bankruptcy Code's enactment in 1978, it analyzes pertinent issues under the Bankruptcy Act—presumably because the debtor filed for bankruptcy in 1977. Thus, like the *Gage Lumber* and *Marshall* decisions, the *D & B Electric* case does not address this Court's authority to impose an equitable lien on real property under the Bankruptcy Code.

[7] Plaintiff's supplement also cites several irrelevant, non-bankruptcy cases that do not address how the Bankruptcy Code authorizes this Court to impose an equitable lien. *See Best v. Jenkins*, 260 S.W.2d 653 (Ky. 1953); *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan*, 577 U.S. 136 (2016); *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356 (2006).

ever become, [the subcontractor's] property, and the trustee can therefore lay no claim to them." *Id*. at 268. Thus, *D & B Electric* also does not concern the authority a bankruptcy court has under the Bankruptcy Code to impose an equitable lien on real property and is inapposite. [8]

As the Court explained in denying Plaintiff's motion for summary judgment, she is the title owner of real property on which she asks the Court to impose an equitable lien. The divorce decree did not award an equitable lien on that property to Plaintiff that this Court may recognize. Plaintiff cites no authority that causes the Court to change its view that she is not entitled to an equitable lien under Kentucky law. [ECF No. 54 at 9-11.] More fundamentally, Plaintiff also has not offered authority establishing that this Court may grant her an equitable lien in this proceeding under the Bankruptcy Code. In fact, as explained above, the Sixth Circuit has held that this Court may not award Plaintiff an equitable remedy here. The Court therefore grants a summary judgment to Debtor on this claim in accordance with Civil Rule 56(f).

## VI. Debtor is entitled to a judgment denying Plaintiff's claim to except a debt from his discharge under 11 U.S.C. § 523(a)(4) as stemming from embezzlement.

Plaintiff asks that a $160,000 debt (plus interest) established in the parties' divorce decree be excepted from Debtor's discharge as being one for embezzlement under § 523(a)(4). "To succeed on a claim made under § 523(a), a plaintiff must prove by a preponderance of the evidence each element to support a determination that a debt is non-dischargeable. Courts

---

[8] The Court notes that the Sixth Circuit criticized the analysis and holding in *D&B Electric*:

> [T]he opinion in *D & B Electric* itself is fundamentally flawed. The holding of *D & B Electric* has been very narrowly construed by other subsequent bankruptcy court decisions construing [K.R.S.] § 376.070 (including two by the judge who wrote *D & B Electric*) and its reasoning has been rejected by other courts. In addition to the subsequent decisions narrowly construing *D & B Electric* and questioning its effect, other courts have declined to adopt the rationale of *D & B Electric* in interpreting § 376.070. Finally, several well reasoned opinions facing similar questions under the laws of other states have expressly declined to follow *D & B Electric*.

*Com. of Ky. for Benefit of United Pac. Ins. Co. v. Laurel Cnty.*, 805 F.2d 628, 634 (6th Cir. 1986) (footnote and citations omitted).

construe exceptions to discharge narrowly and in the debtor's favor." *Koressel v. Bowman (In re Bowman)*, 607 B.R. 614, 619 (Bankr. W.D. Ky. 2019) (citations omitted).

The Court's prior memorandum opinion and order and the order to file supplemental briefs set forth the elements of a claim to except a debt from discharge based on embezzlement, and advised the Court had questions about Plaintiff's proof on an element of the claim:

> [Section] 523(a)(4) excepts from a debtor's discharge a debt for embezzlement. Embezzlement under § 523(a)(4) is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." [*In re Brady*, 101 F.3d 1165, 1172-73 (6th Cir. 1996)] (internal citations and quotation marks omitted). A plaintiff proves "embezzlement by showing (1) that [the plaintiff] entrusted his property to the [d]efendant, (2) the [d]efendant appropriated the property for a use other than that for which it was entrusted, and (3) the circumstances indicate fraud." *Id*.
>
> …
>
> "Embezzlement claims under § 523(a)(4) require 'proof of the debtor's fraudulent intent in taking the [creditor's] property.'" *In re Fox*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007). Upon a review of the record, there appears to be an absence of evidence of Debtor's fraudulent intent in appropriating Plaintiff's property.
>
> …
>
> Within fourteen days of entry of this Order, Plaintiff shall file a legal brief, with supporting evidence, to … show that a material dispute of fact exists that prevents the entry of a summary judgment dismissing her claims under [§ 523(a)(4)] (for embezzlement) ….

[ECF No. 54 at 7; ECF No. 55 at 3, 4 (emphasis removed).] Upon the Court's review of Plaintiff's supplemental submission, the Court scheduled the embezzlement claim for a trial as "summary judgment is generally not appropriate when resolving a dispositive issue requires a determination of intent or state of mind." *Sunamerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.*, 33 F.4th 872, 883 (6th Cir. 2022). Thus, the Court permitted Plaintiff to develop additional evidence of Debtor's intent at trial, including through his testimony.

Neither the Sixth Circuit nor the Supreme Court has elucidated the "fraudulent intent" a creditor must prove to succeed on an embezzlement claim under § 523(a)(4). But the Sixth

Circuit's Bankruptcy Appellate Panel has discussed the issue:

> Fraud comes in many sizes, shapes, and shades of gray.  In other contexts, courts have defined "fraud" as "encompass[ing] 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" . . .  Under this broad definition, a creditor may establish circumstances indicating a debtor's fraudulent intent, even if the debtor did not make a misrepresentation or misleading omission on which the creditor relied. …
>
> This is not to say that a debtor's misrepresentations or omissions are irrelevant to the embezzlement analysis.  To the contrary, misrepresentations, omissions, or other concealment of a debtor's actions regarding a creditor's property are important circumstances that might pierce the shadows to illuminate a debtor's fraudulent intent. …
>
> On the other hand, a debtor's fraudulent intent might be negated by circumstantial evidence showing "that the debtor used [the creditor's property] openly, without attempting to conceal, and had reasonable grounds to believe he had the right to so use." . . .

*Fox*, 370 B.R. at 116-17 (citations and footnote omitted).  The bankruptcy court in *Fox* found no intent to defraud because "the [d]ebtor acted openly rather than hiding or concealing" activity and "the circumstances fail to show any artifice, wrongful scheme, or clever plan of fraud" to support an embezzlement claim, and the Bankruptcy Appellate Panel affirmed.  *Id*. at 117.  Distilling *Fox* and having reviewed and considered the authority cited in the parties' papers, the Court perceives that, to prove fraudulent intent in the embezzlement context under § 523(a)(4), a plaintiff must show the debtor's intent to permanently deprive the plaintiff of their property by way of deceit, artifice, a wrongful scheme, or a clever plan—though proof of a misrepresentation by the debtor is not required.

Being found in contempt based on a willful failure to obey a court order does not prove embezzlement.  At trial, Plaintiff did not establish Debtor had the fraudulent intent required to support an embezzlement claim as evidenced by deception, artifice, a wrongful scheme, or a clever plan.

The evidence introduced at trial, including through the parties' stipulations, established that Debtor continuously operated and controlled the parties' family roofing business for many years prior to the commencement of their divorce proceedings, as well as during the pendency of those proceedings. Shortly after Debtor filed for divorce in 2013, the family court ordered him to deposit income earned by the parties' business in a separate account. Debtor admitted at a deposition taken during that proceeding (and again at the trial in this case) that he received income for the company's work that he did not deposit into a separate account. Rather, Debtor continued to operate the business entirely in cash, used cash received for one project to help pay for the next project, and did not deposit the business' income in any bank account. Plaintiff sought relief from the family court upon learning that Debtor was not segregating the business income; in fact, Plaintiff established at trial that she filed several motions asking the family court to compel Debtor's performance because he was not complying with its order.[9] The family court held Debtor in contempt and incarcerated him as a sanction.

In the divorce decree, the family court found that Debtor did not keep sufficient records of funds into and out of the business during the divorce proceeding to allow a precise determination of the business's income. Extrapolating from the company's tax returns and other evidence it received, the court determined

> that the business earned, after expenses, income of [$120,000] per year and that had the husband properly carried out business activity, not attempted to shut the business down, and complied with the Order of the Court to keep the business funds in a special account that the wife would be entitled to receive the sum of [$160,000] from said account as her share of the business proceeds earned during the pendency of this action….

[ECF No. 65-1 at 3 (Pl. Exh. 2).]

But at trial, Plaintiff did not establish that Debtor engaged in deception related to the

---

[9] This is consistent with the contentions in Plaintiff's supplemental brief. [ECF No. 58 at 2, 5, 6.]

business income.  "Alone, [] the commission of [] self-serving acts, despite any effect of harm, does not automatically lead to a finding of nondischargeability" under a subsection of § 523(a); there must be "a specific intent to actually do the harm…."  *Automated Handling v. Knapik (In re Knapik)*, 322 B.R. 311, 316 (Bankr. N.D. Ohio 2004).

  Plaintiff offered no evidence that Debtor tried to trick her or created an artifice to pull the wool over her eyes regarding how he handled the business' finances.  Instead, he operated the business in cash as he had for decades, and the divorce decree stated that Plaintiff "certainly had no problem with this practice as long as they were married and she was enjoying the benefits." [*Id.*]  In other words, it appears likely that Plaintiff had every reason to know that Debtor continued to operate the roofing business in cash.  When questioned at his deposition in the divorce case, Debtor flatly admitted that he was not depositing the business' income in the bank.  Thus, Plaintiff was not deceived regarding Debtor's failure to segregate the business funds, as evidenced by her repeated efforts to compel his compliance.  Debtor suffered the consequences of his failure to obey the court's order through the contempt sanction of incarceration.

  Plaintiff also established at trial that, at some point during the divorce proceedings, Debtor obtained a $32,000 bank loan, pledging his truck as security for the loan.  After paying off some debts, Debtor kept a significant amount of cash from that loan at his new residence in a hollowed-out book and used the funds to pay for living expenses and to keep the three-person roofing business afloat.  Plaintiff did not show that Debtor's choice to keep cash at home related to his failure to deposit the business' income in the bank.  Similarly, Plaintiff established that Debtor incurred credit card debt totaling about $9,800 after the parties' separation but failed to show that this pertained to or evidenced a deceptive scheme tied to the debt Debtor owes Plaintiff under the divorce decree.  Stated differently, Plaintiff did not prove that Debtor engaged

in a wrongful scheme or clever plan related to the business income at issue by incurring credit card debt.

The facts in this case are starkly different from a recent decision from a sister court granting a plaintiff a summary judgment under § 523(a)(4) based on embezzlement. *See Warren v. Warren (In re Warren)*, Adv. No. 8:21-ap-0029-RCT, 2022 Bankr. LEXIS 3440 (Bankr. M.D. Fla. Dec. 5, 2022). In *Warren*, the plaintiff also sought to except a debt arising from a divorce judgment from the defendant-debtor's discharge. Applying collateral estoppel, the court awarded the plaintiff relief because the divorce judgment included express findings of deception related to the debt at issue. *Id*. at *7 (stating "'there is competent, substantial evidence that [the debtor] engaged in a systemic pattern of deceit and fraud which has harmed the'" plaintiff and the debtor "'went to elaborate lengths in her deceitful behavior[.]'").

Unlike in *Warren*, the family court's orders in this case do not state that Debtor acted to deceive or trick Plaintiff in connection with the business income. Plaintiff also did not adduce evidence at trial that Debtor engaged in deception or trickery sufficient to prove his fraudulent intent. As Plaintiff failed to carry her burden to establish all requisite elements of her § 523(a)(4) claim, Debtor is entitled to a judgment in his favor on that claim.

## VII. Conclusion.

For the reasons stated above, Defendant/Debtor is entitled to a summary judgment in his favor on Plaintiff's claims under § 523(a)(2)(A) and (a)(15) to except a debt from Debtor's discharge and Plaintiff's request for an equitable lien on real property. And, because Plaintiff did not satisfy her burden of proof at trial to establish Debtor's fraudulent intent, Debtor also is entitled to a judgment in his favor on Plaintiff's claim under § 523(a)(4) to except a debt from Debtor's discharge based on embezzlement.

The foregoing constitutes the Court's findings of fact and conclusions of law. In reaching the conclusions found herein, the Court has considered all the evidence, exhibits, and arguments of counsel, regardless of whether the information is specifically referred to in this decision. A separate Judgment shall be entered accordingly.

15

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Wednesday, December 21, 2022**
(tnw)