**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

**IN RE**

**STEVEN K. BAILEY**                                                     **CASE NO. 22-10013**

**DEBTOR**                                                                        **CHAPTER 13**

**REBECCA BAILEY**                                                        **PLAINTIFF**

**V.**                                                                              **ADV. NO. 22-01001**

**STEVEN K. BAILEY**                                                     **DEFENDANT**

**MEMORANDUM OPINION GRANTING JUDGMENT TO DEFENDANT**

### Introduction

This non-dischargeability action stems from contentious divorce proceedings that began in 2013 between Plaintiff Rebecca Bailey and Defendant/Debtor Steven Bailey.  Shortly after the divorce case commenced, the family court entered an order requiring the parties to deposit all proceeds earned by their jointly owned construction company in the company's account during the case.  Defendant did not comply.  A few years later, the court entered a divorce decree and ordered Defendant to pay Plaintiff (a) half the money that should have been deposited in the company's account during the divorce case ($160,000), (b) half the company's value ($45,000), and (c) maintenance ($250/month).  Defendant never made the two lump sum payments.

In 2022, Defendant filed a chapter 13 bankruptcy petition.  Plaintiff then filed this adversary proceeding to, among other things, have the unmade payments excepted from Defendant's discharge.  This Court resolved Plaintiffs' claims in Defendant's favor, but an appellate court reversed the dismissal of two claims on the pleadings.

The parties continued litigating Plaintiff's revived claims upon remand.  Plaintiff moved for a partial summary judgment on her claim to except the $160,000 debt from Defendant's discharge based on his alleged fraud or defalcation while acting in a fiduciary capacity.  After oral argument, the Court reserved on a decision.  It then held a trial on this claim and on Plaintiff's claim that the $160,000 and $45,000 payments ordered in the divorce decree are non-dischargeable domestic support obligations.  For the following reasons, Defendant is entitled to a judgment in his favor on both claims.

## Procedural History

### I.      The Divorce Proceedings.

Plaintiff and Defendant married in 1980.  Defendant filed a divorce petition in 2013. Defendant "remained in possession and control of" their business, Tri-State Roofing and Remodeling, Inc. ("Tri-State"), during the divorce proceedings.  [ECF Nos. 13 ¶ 3.a.; 9 at "Defense No. II;" 34 at "Defense No. 1."]

### A.      The Restraining Order.

Early in the case, Hon. Jeffrey L. Preston granted Plaintiff's motion for a restraining order.  The order he entered—which is both short and central to this proceeding, and thus is reproduced in full below—stated:

> This matter having come before the Court on the Motion of the [Plaintiff] for a Restraining Order restraining [Defendant] from disposing of marital assets during the pendency of this action, and the Court being sufficiently advised;
>
> IT IS HEREBY ORDERED AND ADJUDGED as follows:
>
> 1. That any and all proceeds received by the parties or either of them representing proceeds belonging to the parties' business, [Tri-State], shall be deposited in the accounts of [Tri-State].  Neither party shall usurp to their own benefit payments payable to [Tri-State].  All deposits in the accounts of [Tri-State] shall remain there until further orders of the Court.

2. Neither party shall convey, encumber, or dispose of any assets of the parties, including but not limited to, the assets of [Tri-State] during the pendency of this action.

[ECF No. 112-1 at 3 (the "Restraining Order"); ECF No. 118 ¶¶ 4, 8.]

Thereafter, Defendant received business proceeds and did not deposit them into a Tri-State account. [ECF No. 118 ¶ 5.] Plaintiff notified the family court. [ECF No. 112-1 at 97-100.] Hon. David D. Flatt found Defendant "in Contempt of Court for violation of Court Ordered [*sic*] signed by the undersigned[1] . . . regarding work performed and paid for but no deposits made into account [*sic*] as ordered." [ECF No. 112-1 at 12; ECF No. 118 ¶ 8.] Judge Flatt jailed Defendant as a sanction. [*Id.*] He was released two weeks later after posting a bond.

### B.    The Divorce Decree.

On August 8, 2016, Judge Flatt entered "Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage." [ECF No. 112-1 at 3-11 (the "Divorce Decree").] The "Findings of Fact" section:

- states Tri-State "has provided the sole means and support for the family during most of the marriage."

- notes the Restraining Order's entry, indicating it "direct[ed] the Petitioner [i.e., Defendant] to deposit and retain all funds and payments received as a result of work performed by [Tri-State] in a special account."

- references Defendant's failure to "deposit the company proceeds into a separate account as Ordered" and his resulting incarceration for contempt.

- finds Defendant "indebted" to Plaintiff "for one-half (½) of the company income earned during the pendency of this action."

- states that, in connection with the evidence taken to determine the "amount of money that was earned by [Tri-State] during the pendency of this action and therefore should have been deposited in the aforesaid special account[,]" the court found Defendant's testimony to be "sorely lacking in credibility." It also states Defendant's testimony during the contempt hearing "based on [Defendant's] continued failure to deposit business proceeds into the business account" differed from his deposition testimony, where he was questioned "as to why he had not placed funds into a special account[.]"

---

[1] As noted above, Judge Flatt did not sign the August 22, 2013 order; rather, Judge Preston signed that order.

- finds the expert testimony each party submitted about the value of Tri-State "to be totally lacking in merit or evidentiary value to the Court."

- values Tri-State at $90,000—despite "having no credible evidence" of its "actual fair market value"—"[b]ased on the Parties [*sic*] expenditures and lifestyle and apparent lack of significant debt."

- concludes Tri-State "earned, after expenses," $120,000 in yearly income during the pendency of the divorce case based on a review of pre-divorce income tax returns and "the testimony tendered by the business appraisal experts and the interpretation of those experts of the Parties [*sic*] tax returns[.]"

- states that, if Defendant had "properly carried out business activity" and complied with the Restraining Order, Plaintiff "would be entitled to receive the sum of [$160,000] from said account as her share of the business proceeds earned during the pendency of this action," computed to be $60,000 per year "for [Plaintiff's] share."

- finds Tri-State "should be awarded to" Defendant "as he had the possession and control of said business since said separation, and he was the one primarily doing the daily work in the corporation for a period of years, and at this point of the Parties' lives it would not be proper to award the roofing and remodeling company to" Plaintiff.

- finds Plaintiff "[l]acks sufficient property including marital property apportioned to her to provide for her reasonable needs and is unable to support herself through appropriate employment" and "therefore [Plaintiff] is entitled to receive maintenance from" Defendant.

- states, to determine "maintenance" to be paid to Plaintiff, the court considered "the financial resources of [Plaintiff], including the martial [*sic*] property apportioned to her, and her ability to meet her needs independently, the time necessary to acquire sufficient education or training to enable [Plaintiff] to find appropriate employment, the standard of living established during the marriage, the duration of the marriage, the age and the physical and emotional condition of [Plaintiff], and the ability of [Defendant] to meet his needs while meeting those of the spouse seeking maintenance."

- states Plaintiff is entitled to $250 per month for "maintenance" "for the remainder of her lifetime, or [until she] should re0marry [*sic*] or otherwise co-habit with another person."

[*Id.* at 3-9.]  While the next section of the Divorce Decree ("Conclusions of Law") contains no

pertinent provisions, the last section ("Decree of Dissolution of Marriage"):

- awards ownership of the parties' real estate consistent with a prior finding of fact, awarding one parcel to Plaintiff, a second to Defendant, and requiring a third to be sold.

- awards Tri-State, and all its stock, to Defendant and "require[s] [Defendant] to pay" Plaintiff $45,000 "for her interest in" Tri-State.

- holds Defendant "indebted" to Plaintiff for $160,000, "representing the sum, which is owed to [Plaintiff] from the business proceeds during the pendency of this action, which sums [Defendant] was ordered to deposit into a special account, but failed to do so."

- awards equipment, and assigns any related indebtedness, to Defendant.
- awards the furnishings in the marital residence to Plaintiff along with "all other personalty of the Parties."
- states Defendant "shall be required to pay maintenance of [$250] per month to [Plaintiff] for the remainer of her life, or until such time as [Plaintiff] shall remarry or otherwise co-habit with another person.

[*Id.* at 10-11.]

In the five-plus years before Defendant filed his chapter 13 bankruptcy petition, he did not pay Plaintiff $45,000 "for her interest in" Tri-State or $160,000 as "the sum … owed to [Plaintiff] from the business proceeds during the pendency of" the divorce.  [ECF Nos. 13 ¶ 3.h.; 9 at "Defense No. II;" 34 at "Defense No. 1."]

## II.    The Adversary Proceeding.

### A.    Plaintiff's claims in this adversary proceeding.

Plaintiff filed a complaint to commence this case on May 10, 2022, and an amended complaint on July 6, 2022.  [ECF Nos. 1, 13 (the "Complaint"), 32 (order granting motion for leave to amend).[2]]  The Complaint alleged Defendant owed Plaintiff a $273,675 debt (including interest) under the Divorce Decree that was not subject to discharge pursuant to § 523(a)(5)[3] and § 523(a)(15) because this debt "is owed to her as a judgment for a domestic support obligation[.]"  [Complaint ¶ 6.]  Plaintiff also alleged $160,000 (plus interest) of the debt should be excepted from Defendant's discharge pursuant to § 523(a)(2)(A) and § 523(a)(4):

> 7.  Rebecca Bailey further contends that a portion of the indebtedness owed her is non-dischargeable pursuant to 11 USCA Section 1328 and 523(a)(2)(A) and 11 USCA Section 523(a)(4) because a portion of said indebtedness in the amount of One Hundred Sixty Thousand Dollars ($160,000.00)- plus interest thereon, represents funds, which the debtor, Steven Bailey, was required by Court Order of

---

[2] The original complaint attached several referenced documents, including the Divorce Decree—but not the Restraining Order.  The amended complaint (defined herein as the "Complaint") incorporated the same documents by reference but did not attach them.  This Opinion refers to the documents as being attached to the "Complaint."

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ____," and references to the Federal Rules of Civil Procedure appear as "Civil Rule ____."

the Greenup Circuit Court to deposit in an escrow account and hold in a fiduciary positions [*sic*], which funds the debtor failed to so hold in trust and failed to maintain in an escrow account, but rather the debtor, Steven Bailey, converted said sums to his own use and all for which the debtor Steven Bailey was found liable to Rebecca Bailey in the amount of One Hundred Sixty Thousand Dollars ($160,000.00), at the rate of 6% plus interest, as a result of said breach of fiduciary obligation and fraud, and all for which the creditor holds judgment against Steven Bailey by virtue of the judgment of the Greenup Circuit Court for said fraud and failure to maintain said sums in a fiduciary position as a result of the fraudulent acts of Steven Bailey as aforesaid, as said acts all establish a non-dischargeable debt because the Debtor committed fraud, or defalcation, while acting in fiduciary capacity, embezzlement and/or larceny contrary to the provisions of 11 USCA Section 523(a)(4).

8.   Therefore, One Hundred Sixty Thousand Dollars ($160,00.00) of the sums owed to the creditor plus Fifty Three Thousand Six Hundred ($53,600.00) for interest on the One Hundred Sixty Thousand Dollars ($160,000.00) are non-dischargeable because of said breach of fiduciary duty and fraud defalcation, embezzlement, and/or larceny, for a total sum of $213,600.00 which is non-dischargeable because of breach of fiduciary duty and fraud, and/or defalcation, while acting in a fiduciary capacity, and embezzlement and/or grand larceny.

[Complaint ¶¶ 7, 8.[4]]

Defendant filed an answer to the Complaint.  [ECF No. 34.]  It incorporated the

affirmative defenses and responses in his answers to the original complaint.  [ECF Nos. 9, 11.]

**B.      The Order granting Defendant's motion for a judgment on the pleadings.**

A few months later, both parties filed dispositive motions.  Defendant sought a judgment

on the pleadings under Civil Rule 12(c) (incorporated via Bankruptcy Rule 7012) on Plaintiff's

§ 523(a)(4) claim.  [ECF No. 35.]  He also argued that, while the Divorce Decree required him to

"pay maintenance" to Plaintiff—by which he meant the $250 monthly obligation, which he had

been paying prepetition—the $160,000 and $45,000 obligations in the Divorce Decree are

dischargeable as they "are in the form of an award as a division of marital property and assets."

---

[4] The Complaint also sought two other forms of relief against Defendant.  First, Plaintiff sought to determine the value of property listed in Defendant's bankruptcy schedules.  [*Id*. ¶¶ 9-10.]  Second, Plaintiff asked for the imposition of an equitable lien in her favor on certain real property.  [*Id*. ¶¶ 11-12.]

[*Id*. at 2.]  For support, Defendant referenced the Divorce Decree and "all the relevant copies or orders and decrees of the" family court attached to and/or referenced in the Complaint.  [*Id*.[5]]

On the same date, Plaintiff moved for a partial summary judgment under Civil Rule 56 (incorporated via Bankruptcy Rule 7056).  [ECF No. 36.]  Plaintiff sought a judgment on her claim under § 523(a)(4) based on Defendant's purported fraud or defalcation while acting in a fiduciary capacity, larceny, and embezzlement.[6]

The parties opposed each other's motions.  [ECF Nos. 35, 36.]  After hearing argument, the Court entered a "Memorandum Opinion and Order Granting Motion for Judgment on the Pleadings In Part and Denying Motion for Partial Summary Judgment."  [ECF No. 54 (the "MJP Order"); *see also Bailey v. Bailey (In re Bailey)*, Adv. No. 22-1001, 2022 Bankr. LEXIS 2651, 2022 WL 4474128 (Bankr. E.D. Ky. Sept. 26, 2022).]  The Court dismissed Plaintiff's § 523(a)(5) claim on the pleadings, finding the Complaint and its referenced attachments failed to state a viable claim.  It explained the $273,675 sought constituted a business debt and was not "in the nature of alimony, maintenance, or support" based on a review of the Divorce Decree.  [*Id*. at 4-5.]  The Court also held the Complaint failed to state a claim under § 523(a)(4) for larceny and for fraud or defalcation while acting in a fiduciary capacity.  [*Id*. at 6-8.[7]]  The Court denied Plaintiff's motion for a partial summary judgment.

---

[5] Defendant also argued Plaintiff's request to value a scheduled asset "is more appropriate for an evaluation hearing [*sic*] before the Court without the necessity of this matter being addressed in the adversarial complaint."  [*Id*. at 3.]

[6] Plaintiff also asked the Court to award her (a) an equitable lien on real property, and (b) a judgment excepting the debt owed to her from Defendant's discharge under § 523(a)(6).  [ECF No. 36.]  After Defendant responded that the Complaint did not allege a § 523(a)(6) claim, Plaintiff moved to amend to add the claim.  [ECF No. 41.]  The motion was denied [ECF No. 53], and Plaintiff did not appeal this ruling.

[7] The Court further found Defendant's property should be valued in his main bankruptcy case.  [MJP Order at 8.]

**C.      Additional briefing, the first trial, and the judgment in Defendant's favor.**

After entry of the MJP Order, several claims remained pending, including Plaintiff's claim under § 523(a)(4) to except a debt from Defendant's discharge based on embezzlement.[8] The Court entered an order identifying questions about the remaining claims and requiring supplemental briefing.  [ECF No. 55.]  The parties complied [ECF No. 58, 59] and presented oral argument.  The Court then set a trial only on Plaintiff's embezzlement claim.  [ECF No. 63.] After holding the trial, the Court issued a "Memorandum Opinion Granting Judgment to Defendant" and a corresponding judgment on all the claims in Defendant's favor.  [ECF Nos. 77, 78; *see also Bailey v. Bailey (In re Bailey)*, Adv. No. 22-1001, 2022 Bankr. LEXIS 3596, 2022 WL 17835174 (Bankr. E.D. Ky. Dec. 21, 2022).]

**D.      Plaintiff's appeal to the BAP.**

Plaintiff appealed to the U.S. Bankruptcy Appellate Panel for the Sixth Circuit ("BAP") from the MJP Order and the post-trial opinion and judgment.  [ECF No. 79.]  Plaintiff sought review of the rulings on two claims dismissed in the MJP Order (her § 523(a)(4) claim based on fraud or defalcation in a fiduciary capacity and her § 523(a)(5) claim asserting the Divorce Decree created a domestic support obligation) and two claims resolved in the post-trial opinion and judgment (her § 523(a)(4) embezzlement claim and her equitable lien claim).

The BAP affirmed in part and reversed in part.  [ECF No. 94; *see also Bailey v. Bailey (In re Bailey)*, No. 23-8001, 2024 Bankr. LEXIS 866, 2024 WL 1511984 (B.A.P. 6th Cir. April 8, 2024) (the "BAP Opinion").]  The BAP affirmed the two appealed rulings from the post-trial opinion and judgment.  It found error in the dismissal on the pleadings of Plaintiff's § 523(a)(4)

---

[8] The other remaining claims were Plaintiff's (1) request for the Court to impose an equitable lien on real property, (2) claim to except a debt from Defendant's discharge under § 523(a)(2)(A), and (3) claim to except a debt from Defendant's discharge as one obtained via a divorce decree under § 523(a)(15).

claim for fraud or defalcation in a fiduciary capacity and her claim that the lump sum payments

awarded to her in the Divorce Decree were not dischargeable under § 523(a)(5).  The BAP

vacated the rulings on these claims and remanded for further proceedings.

### E.     Post-remand activities.

Upon remand, the Court received status reports from the parties and held a status hearing

on June 12, 2024.  [ECF Nos. 95, 98, 99.]  A new trial order permitted a short period for

additional discovery, allowed for dispositive motions, and set a trial date of August 14, 2024.

[ECF No. 102.]  Plaintiff later moved for additional time to complete discovery—specifically,

the deposition of Judge Flatt (who entered the Divorce Decree)—which was granted without

opposition.  [ECF Nos. 105, 111.]

### 1.     Plaintiff's motion for a partial summary judgment.

Plaintiff moved for a partial summary judgment on her § 523(a)(4) claim for fraud or

defalcation in a fiduciary capacity.  [ECF No. 107.]  The motion primarily cited the terms of the

Restraining Order and the Divorce Decree, contending:

> Considering the Order of the Court for the account and the sums to be deposited
> therein which the Defendant refused to do, the Defendant clearly committed fraud
> or defalcation while acting in a fiduciary capacity. All of the elements are met:
>
> 1. The account clearly created the trust,
>
> 2. There existed an ascertainable res (the business income)
>
> 3. There existed a sufficiently certain beneficiary (the Plaintiff . . .), and
>
> 4. [Defendant] was supposed to administer the account (trust account).

[*Id*. at 4.]  In addition to these documents, Plaintiff cited two cases related to the elements of the

claim: *Patel v. Shamrock Floorcovering Servs. (In re Patel)*, 565 F 3d 963 (6th Cir. 2009), and

*Tavadia Enters. v. Mitchell (In re Mitchell)*, 618 B.R. 199, 210 (Bankr. W.D. Ky. 2020).  [*Id*.]

Plaintiff referenced the BAP Opinion, including for its holding that it was error to dismiss

Plaintiff's claim on the pleadings.  [*Id*. at 5.]  And Plaintiff contended Defendant's October 2014

deposition in the divorce case showed he had fraudulent intent in not depositing Tri-State proceeds in its account as ordered.  [*Id*. at 5-8.]

Defendant responded to Plaintiff's motion.  [ECF No. 116.]  Defendant argued the evidence did not support Plaintiff's claim and contended that "[a]though the [BAP] has remanded a portion of this case for further proceedings, the defendant believes the trial Court's original holdings, both from the granting of judgement [*sic*] on the pleading, as well as judgement [*sic*] in favor of the defendant after the adversarial hearing are applicable.  The law stated therein is still relevant and pertinent to any continued claims by the plaintiff."  [*Id*. at 3.] Argument on Plaintiff's motion was set to be heard immediately before the trial.

The Court convened a conference a week before the trial.  At that time, the Court advised that, when arguing the motion for summary judgment, the parties should address whether the Restraining Order created an express trust under Kentucky law, as contemplated in the BAP Opinion.  [ECF No. 122 at 2:45-4:20; *Bailey*, 2024 Bankr. LEXIS 866, at *25 (remanding to allow Plaintiff to establish the Restraining Order created a trust when issued).]

The parties argued Plaintiff's motion before the trial.  [ECF No. 128.]   Plaintiff discussed the *Patel* case (in which a trust was created by operation of law) and contended that, similarly, the "injunctive order from the trial court" (i.e., the Restraining Order) "created a trust" with "ascertainable" funds that Defendant received and did not deposit in Tri-State's account, with a "sufficiently finite beneficiary," *i.e.*, Plaintiff.  [*Id*. at 1:38- 4:40.]  Plaintiff noted the family court's later holding in the Divorce Decree that she was "entitled to half of the proceeds that should have [been deposited] into that account" and stated Defendant "was charged" with "gathering the funds, depositing the funds into the … business account, and holding the funds in the business account."  [*Id*. at 4:41-5:04.]  Plaintiff said that, as in *Patel*, the Restraining Order

"created a trust by operation of law," specifically "Kentucky's rules on temporary injunctions" and duties officers owe to corporations. [*Id*. at 16:10-16:55.] Plaintiff also argued the facts satisfy the requirements to establish a constructive trust. [*Id*. at 16:55-17:04.]

Defendant countered that the wording of the Restraining Order itself did not support Plaintiff's argument; it was an "interim order" to "set up" an account, which Mr. Bailey admittedly did not do. [*Id*. at 7:20-9:00.] Defendant noted the BAP remanded the § 523(a)(4) claim as it found the Complaint sufficiently alleged a cause of action—but, he argued, the Restraining Order does not say what Plaintiff contends it says. [*Id*. at 9:02-9:42.] Defendant further averred that Plaintiff offered no other evidence with the motion to support the existence of a trust; rather, Plaintiff was "trying to call something a trust when it's not there. . . . All [Plaintiff has] got is an interim order that was then taken into consideration ultimately with the [Divorce] Decree that created what would be a property award." [*Id*. at 12:55-13:21.]

The Court reserved a ruling on the motion and held the trial. [ECF No. 128.]

## 2. The second trial.

The parties stipulated to the admissibility at trial of several documents from the divorce proceeding, including the Divorce Decree and the Restraining Order [ECF No. 118 ¶8], and Plaintiff moved each exhibit into evidence. Defendant testified in person, answering questions from both Plaintiff's counsel and his own. The Court generally observed Defendant to be a reluctant witness who distrusted Plaintiff's counsel—who has represented Plaintiff since the divorce was filed in 2013—but otherwise found his testimony credible. Defendant's testimony, however, generally was not developed in a way to be relevant to the issues before the Court.

Neither Plaintiff nor Defendant called any other witness to testify at the trial, nor did Plaintiff attend the trial. However, Plaintiff moved the Court to admit Judge Flatt's July 19,

2024 deposition testimony into evidence.  Defendant objected, as further discussed below.  The

evidence then closed subject to a ruling on the deposition testimony's admissibility.

## Analysis

### I.      Jurisdiction, Venue, and Legal Standards.

This Court has jurisdiction over this proceeding. 28 U.S.C. § 1334(a). Venue is proper in

this District.  28 U.S.C. § 1409.  This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (I), and

(O).  The parties consent to the Court's entry of final orders.[9]

Plaintiff moved for a summary judgment on her § 523(a)(4) claim.  Summary judgment is

appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to

judgment as a matter of law."  *See* FED. R. CIV. P. 56(a).  A court's task is not "to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue exists

when there is sufficient "evidence on which the [factfinder] could reasonably find for the [non-

movant]."  *Id*. at 252.  A court must view all facts and inferences in the light most favorable to

the non-movant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The parties tried Plaintiff's § 523(a)(4) and (a)(5) claims.  To succeed on a § 523(a) claim

at trial, "a plaintiff must prove by a preponderance of the evidence each element to support a

determination that a debt is non-dischargeable.  Courts construe exceptions to discharge

narrowly and in the debtor's favor."  *Koressel v. Bowman (In re Bowman)*, 607 B.R. 614, 619

(Bankr. W.D. Ky. 2019) (citations omitted).

---

[9] Before starting the trial, the parties discussed Plaintiff's jury demand.  [Complaint at 6.]  Plaintiff confirmed her
agreement and understanding that she had no right to a jury trial.  [ECF No. 128; *see also* ECF No. 77 at 3 n.4.]

II.     **Defendant is Entitled to a Judgment in his Favor on Plaintiff's Claim to Except a Debt from his Discharge Under 11 U.S.C. § 523(a)(4) Based on Fraud or Defalcation in a Fiduciary Capacity.**

In her motion for a partial summary judgment and at trial, Plaintiff almost exclusively relied on the Restraining Order to support her § 523(a)(4) claim to except the $160,000 debt (plus interest) in the Divorce Decree from Defendant's discharge.  Plaintiff sought to prove Defendant "was required by [the Restraining Order] to deposit in an escrow account and hold in a fiduciary positions [*sic*], which funds the debtor failed to so hold in trust and failed to maintain in an escrow account, but rather [Defendant] converted said sums to his own use . . . ."  [ECF No. 13 ¶ 7.]  Plaintiff's theory fails because the Restraining Order does not say what she contends it does and she offered no other compelling evidence to support her claim.

A.     **Elements of the claim.**

"[The] exception for 'defalcation while acting in a fiduciary capacity' follows from Congress's desire to protect trust relationships: when the bankrupt is a trustee and the creditor a trust beneficiary, § 523(a)(4) points the needle away from discharge; it is yet another example of the law's imposition of high standards of loyalty and care on trustees."  *Patel*, 565 F.3d at 967 (citations omitted).  In *Piercy*, the Sixth Circuit explained the basis to except from a debtor's discharge a debt for fraud or defalcation in a fiduciary capacity under § 523(a)(4):

> To except a debt from discharge as a defalcation, the preponderance of the evidence must establish "(1) a preexisting fiduciary relationship, (2) a breach of that fiduciary relationship, and (3) a resulting loss." *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005)).  The threshold issue here is whether the [plaintiff was] in a preexisting fiduciary relationship with [the defendant].
>
> For these purposes, the term "fiduciary capacity" is construed "more narrowly than the term is used in other circumstances." *In re Blaszak*, 397 F.3d at 391. Here, the term "covers only 'express' or 'technical trusts' and not trusts arising out of 'the very act of wrongdoing.'" *Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009) (quoting *Davis v. Aetna*

13

*Acceptance Co.*, 293 U.S. 328, 333 [ ] (1934)).  Constructive or resulting trusts, "which arise *ex maleficio* (at the time the wrong is done), do not satisfy the 'fiduciary capacity' requirement because the debtor 'was not a trustee before the wrong.'" *Id*. (citation omitted).  The "fiduciary capacity" requirement will be found only in "situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor."  *In re Bucci*, 493 F.3d at 639-40 (citation omitted).  In short, a creditor-plaintiff in a bankruptcy court establishes the existence of an express or technical trust by demonstrating "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary."  *Id*. at 640 (quoting *In re Blaszak*, 397 F.3d at 391-92).  Although the question of whether a fiduciary relationship exists is ultimately governed by federal law, 'state law is important in determining when a trust relationship exists.'  *In re Blaszak*, 397 F.3d at 391 (citation omitted).

*Long v. Piercy (In re Piercy)*, 21 F.4th 909, 926 (6th Cir. 2021).

A few years earlier, the Sixth Circuit in *Poynter* offered a slightly different formulation of the elements of this claim, stating a plaintiff "must establish: '(1) the existence of a trust, either express or statutorily created; (2) the debtor owed a fiduciary obligation with relation to that trust; and (3) the debtor breached his or her fiduciary duty by either misappropriating the trust res or by simply failing, intentionally or unintentionally, to properly account for the trust res.'"  *Poynter v. Great Am. Ins. Co. (In re Poynter)*, 535 Fed. Appx. 479, 481-82 (6th Cir. 2013) (citation omitted)).  The court also wrote that "[s]tate law governs whether an express or technical trust exists" and "[u]nder Kentucky law, an express or technical trust is created by: '(1) an expressed intent to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and (4) [a] trustee who administers the trust for the beneficiary.'"  *Id*. at 482 (citations omitted).

Plaintiff contends the Restraining Order created an express trust with an ascertainable res, that it appointed Defendant as trustee to administer the trust on Plaintiff's behalf as beneficiary, and that he intentionally breached his fiduciary obligation as trustee to deposit and hold funds in the trust for Plaintiff's benefit, resulting in her loss.  The summary judgment and trial record established that Defendant operated Tri-State and received business proceeds that he did not

14

deposit into a Tri-State account as the 2013 Restraining Order required.  Further, as the family

court held in 2016 that Plaintiff was entitled to receive half the proceeds that should have been

deposited in Tri-State's account during the divorce proceedings, and Plaintiff did not receive

these funds, Plaintiff also proved Defendant's failure to deposit the funds ultimately resulted in

her loss.  But Plaintiff did not establish that a fiduciary relationship existed between Plaintiff and

Defendant based on a trust imposed on the business proceeds.

> **B.**      **Under Kentucky law, courts must consider whether an instrument's language reflects the intent to create a trust.**

Courts applying Kentucky law typically review an instrument's language to assess

whether it manifests the intent to create a trust.  *See, e.g., Poynter*, 535 F. App'x at 482 (stating

that, to establish the existence of a trust, "there must be a manifestation of an intent on the part of

the alleged trustee to create [a trust] in favor of the alleged beneficiary to the particular funds

involved." (citation omitted)).  Those courts have found it "important that the word 'trust' was

used in the pertinent written agreement when finding that an express trust had been created" and

whether it describes "a trust *res* or any language stating that [the debtor] would serve as [the

creditor's] trustee."  *Calloway Cleaning & Restoration, Inc. v. McFarland (In re McFarland)*,

Adv. No. 17-2004, 2018 Bankr. LEXIS 451, at *16 (Bankr. E.D. Ky. Feb. 20, 2018) (citing

*Poynter*, 535 Fed. App'x at 482); *see also Appalachian Oil Co. v. Ky. Lottery Corp. (In re

Appalachian Oil Co.)*, Adv. No. 10-5057, 2012 Bankr. LEXIS 1709, at *14-15 (Bankr. E.D.

Tenn. Mar. 23, 2012) (finding an intent to create a trust based on language in a Kentucky statute

and a licensing agreement referencing a "trust fund" requiring funds to be held "in a fiduciary

capacity" on a creditor's behalf); *In re Smith*, 238 B.R. 664, 671 (Bankr. W.D. Ky. 1999)

(finding language in an agreement stating "all money" to be held "as a trust for the benefit of

laborers … and for no other purpose" established an intent to create a trust) (emphasis removed);

*Benjamin v. JP Morgan Chase Bank, N.A.*, 305 S.W.3d 446, 453 (Ky. Ct. App. 2010) (finding a will intended to form a trust as it bequeathed "the residue of [an] estate to [a named individual] 'as Trustee on behalf of the following [charitable] organizations....'").

    **C.**    **The Restraining Order did not create an express or technical trust under Kentucky law.**

As the Restraining Order is central to Plaintiff's argument, its language is crucial—and does not support Plaintiff's position.  It states: "any and all proceeds received by the parties or either of them representing proceeds belonging to the parties' business, [Tri-State], shall be deposited in the accounts of" Tri-State.  [Restraining Order, ECF No. 112-1 at 3.]  It declares the funds in Tri-State's accounts "shall remain there until further orders of the Court."  [*Id.*]  It directs that "[n]either party shall convey, encumber, or dispose of any assets of the parties, including but not limited to, the assets of Tri-State . . . during the pendency of this action."  [*Id.*]

Also crucial here is what the Restraining Order does *not* say.  The words "trust," "trustee," "fiduciary," "beneficiary," and "escrow account" are not used.  [*Id.*]  The Restraining Order does not designate Plaintiff (or anyone else) as a beneficiary, *i.e.*, it does not state Plaintiff (or anyone else) had any entitlement to *any* funds deposited in Tri-State's account.  (After all, as it notes, the funds at issue were proceeds belonging to Tri-State—a legal entity separate from its owners.)  Plaintiff offered no proof of any intention that, when the Restraining Order was entered in 2013, it was contemplated that funds deposited into Tri-State's account during the divorce case would be distributed to her (or anyone else) at the end of the case and should be held until then for that purpose.  Further, the Restraining Order does not state Defendant would administer or oversee funds in the account, *i.e.*, serve as trustee of the trust res for a designated beneficiary. Indeed, it prohibited both Plaintiff and Defendant from accessing any funds deposited into Tri-State's account absent "further orders of the Court."  [*Id.*]

The Restraining Order's language differs markedly from the wording used in instruments in which courts found an intent to create an express trust.  It does not declare "an expressed intent to create a trust," or identify "a sufficiently certain beneficiary" or "[a] trustee who administers the trust for the beneficiary."  *Poynter*, 535 F. App'x at 482 (6th Cir. 2013) (citation omitted).  Therefore, the Restraining Order itself does not provide support for at least three of the four elements of an express trust under Kentucky law.[10]  Plaintiff did not otherwise establish those elements with other admitted evidence.

The primary case Plaintiff cites to support her theory that the Restraining Order created a trust is *In re Patel*, 565 F.3d 963.[11]  [ECF No. 107 at 4; *see also* ECF No. 128 at 1:30-2:30 (arguing motion for summary judgment, stating "we rely heavily on the *In re Patel* case" and "we note the similarities between the *Patel* case and the Bailey case, a lot of similarities. Basically, in that case, a trust was created by operation of law.  In our case, we have an injunctive order from the trial court which we stand before the court [and] say created a trust."), 1:44:50-1:45:13 (in summation, "We've relied heavily, relied repeatedly in this action on the case *In re Patel . . . .*  We would assert to you that this order, from the judge, created that trust.").[12]]  *Patel* concerned whether a state statute created a technical trust.  "Technical trusts are

---

[10] As Plaintiff failed to prove these elements of her claim, the last element, the existence of an ascertainable res, is immaterial.  However, "[u]nder Kentucky law, to merely identify a future trust asset or *res* does not create a trust corpus" and "the [trust res] must then have been in existence [at the time of the trust's creation] and its identity definite so that it could be ascertained as to just what was set aside."  *Acuity, a Mut. Ins. Co. v. Planters Bank, Inc.*, 362 F. Supp. 2d 885, 892 (W.D. Ky. 2005); *see also Poynter*, 535 F. App'x at 483 ("under Kentucky law, a trust is not created by merely identifying a future trust res.").  Any trust res contemplated in the Restraining Order would be business proceeds that might be received and deposited into Tri-State's account in the future.

[11] As noted above, Plaintiff's summary judgment motion also cites *In re Mitchell*, 618 B.R. 199, in which the court outlined the law on § 523(a)(4) claims and found Plaintiff did not prove a defalcation claim.  The motion does not explain how *Mitchell* supports Plaintiff's theory of the case, and the Court will not create an argument for her.

[12] In summation, Plaintiff also argued "there are numerous cases [in which] the courts have found constructive trusts by operation of law" and the Restraining Order "basically created that trust."  [ECF No. 128 at 1:45:18-1:45:38.] However, "the defalcation provision of § 523(a)(4) applies to express or technical trusts, but not to constructive trusts that courts may impose as an equitable remedy."  *Blaszak*, 397 F.3d at 391 (citation omitted).

created by an agreement between the parties to impose a trust relationship, or by a statute that specifically imposes fiduciary obligations on a party." *Peoples Bank & Trust Co. v. Penick (In re Penick)*, 199 B.R. 16, 20 (Bankr. E.D. Ky. 1999); *see also Poynter* at 481 (referring to "a trust, either express or statutorily created.").[13]

In *Patel*, the debtor was the president and half owner of a general contracting company. A subcontractor obtained a state court default judgment against the debtor and his company when they failed to pay amounts owed for work on a project. The debtor then sought bankruptcy relief, leading the subcontractor to file a non-dischargeability action. The subcontractor argued a state statute created a "technical trust" between the debtor and the subcontractor. *Id*. at 968. The Sixth Circuit agreed, finding that express statutory language created a technical trust and imposed a fiduciary duty on the debtor for purposes of § 523(a)(4). *Id*. at 969. As the debtor recklessly misallocated funds and violated his statutory duty to pay his subcontractors first, the Sixth Circuit concluded the debtor committed a defalcation in a fiduciary capacity. *Id*. at 969-71.

In this case, Plaintiff never alleged or attempted to prove that a statute (state or federal) created a technical trust.[14] Although Plaintiff referred at trial to Kentucky Civil Rules 65.02, 65.03, and 65.04—which govern restraining orders and injunctions, such as the Restraining Order in the divorce case—these state civil procedure rules are not statutes and are not directed at creating a technical trust under Kentucky law.

For these reasons, Plaintiff did not satisfy each element of her § 523(a)(4) claim by a preponderance of the evidence. Plaintiff's motion for a partial summary judgment is denied, and Defendant is entitled to a judgment in his favor.

---

[13] Plaintiff never alleged or tried to prove that the parties had an agreement imposing a trust relationship.

[14] Of note, Kentucky's Uniform Trust Code states a "trust" "means an express trust established by a trust instrument" but not "a trust established by the judgment of a court[.]" KY. REV. STAT. § 386B.1-010(19).

### III.    Defendant is Entitled to a Judgment on Plaintiff's § 523(a)(5) Claim.

Plaintiff contends the amounts awarded to her in the Divorce Decree (a) to compensate her for her ownership interest in Tri-State ($45,000 plus interest), and (b) consisting of her half of the funds that should have been deposited in Tri-State's account during the parties' divorce proceeding ($160,000 plus interest), should be considered non-dischargeable domestic support obligations.  Plaintiff also did not prove an entitlement to relief on this claim at trial.

### A.    Elements of the claim.

A debt that is a "domestic support obligation" is not dischargeable in bankruptcy under § 523(a)(5).  One court summarized the elements of this claim as follows:

> A "domestic support obligation" is a debt that "accrues before, on, or after the date of the order for relief" that is "owed to or recoverable by a spouse, former spouse or child of the debtor or such child's parent, legal guardian, or responsible relative." 11 U.S.C. § 101(14A)(A) [ ].  Section 523(a)(5) provides four elements that must be satisfied to establish a domestic support obligation claim: 1) the debt must be "owed to or recoverable by" a governmental unit or a person with a specific relationship to the debtor; 2) the underlying obligation must be in the nature of support; 3) the obligation must arise from an agreement, court order, or as otherwise defined; and 4) the debt must not be assigned to a nongovernmental entity unless voluntarily done.  11 U.S.C. § 101(14A).

*Dinicola v. Slimak (In re Dinicola)*, Adv. No. 10-1404, 2011 Bankr. LEXIS 3247, at *5-6 (Bankr. N.D. Ohio Aug. 25, 2011) (emphasis removed).  The sole disputed element here is the second—whether the lump sum obligations in the Divorce Decree were "in the nature of support, or whether [they were] in actuality a division of marital property."  *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 400 (6th Cir. 1998) (citing *In re Calhoun*, 715 F.2d 1103, 1109 (6th Cir. 1983)).

"Domestic support obligations include debts established by a court order that are 'in the nature of' maintenance or support, 'without regard to whether such debt is expressly so designated.'"  *Dougherty-Kelsay v. Kelsay (In re Dougherty-Kelsay)*, Case No. 22-5270, 2022 U.S. App. LEXIS 28783, at *5 (6th Cir. Oct. 17, 2022) (citations omitted).  "The non-debtor

seeking a determination of nondischargeabilty under § 523(a)(5) bears the burden of proving all

elements by a preponderance of the evidence … including '[t]he burden of demonstrating that an

obligation is in the nature of support.'"  *Bailey*, 2024 Bankr. LEXIS 866, at *27 (citations

omitted).  An obligation not specifically designated as maintenance may be deemed to be "in the

nature of support" in the following circumstances:

> First, the obligation constitutes support only if the state court or parties intended
> to create a support obligation.  Second, the obligation must have the actual effect
> of providing necessary support.  Third, if the first two conditions are satisfied, the
> court must determine if the obligation is so excessive as to be unreasonable under
> traditional concepts of support.  Fourth, if the amount is unreasonable, the
> obligation is dischargeable to the extent necessary to serve the purposes of federal
> bankruptcy law.

*Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir. 1993) (citation omitted).

The BAP Opinion explains:

> "[T]he bankruptcy court may consider any relevant evidence including those
> factors utilized by state courts to make a factual determination of intent to create
> support."  *In re Calhoun*, 715 F.2d at 1109.  Such factors might include "(1) the
> disparity of earning power between the parties; (2) the need for economic support
> and stability; (3) the presence of minor children; and (4) marital fault."  *Bailey v.
> Bailey (In re Bailey)*, 254 B.R. 901, 906 (B.A.P. 6th Cir. 2000).  Other indicia
> might include the nature of the obligation assumed, the structure and language of
> the court's decree, the provision of other lump sum or periodic payments, the
> duration of the marriage, and the work skills and abilities of the parties.  *See
> Luman v. Luman (In re Luman)*, 238 B.R. 697, 706 (Bankr. N.D. Ohio 1999),
> *cited with approval in In re Bailey*, 254 B.R. at 906.

*Bailey*, 2024 Bankr. LEXIS 866, at *30-31.

    **B.**    **Defendant's parol evidence objection to the admission of Judge Flatt's
deposition testimony is sustained.**

To support her § 523(a)(5) claim, Plaintiff moved the Court to accept Judge Flatt's

deposition testimony into evidence at trial.  Plaintiff argued the testimony provided evidence of

his intent concerning whether the lump sum payments to Plaintiff in the Divorce Decree were

intended to be in the nature of support.  Defendant objected based on the parol evidence rule and

relevance.[15]  Defendant averred the Divorce Decree contained all the family court's rulings and it

was unnecessary and inapt to consider the testimony to interpret the Divorce Decree.  Plaintiff

responded that the BAP Opinion stated she should be permitted to explore and establish the

intent behind the Divorce Decree.  *See Bailey*, 2024 Bankr. LEXIS 866, at *31-32 ("While the

[Divorce Decree] contains the state court's rationale for its maintenance award of $250.00 per

month, expressly addressing several of the *Calhoun* factors, if [Plaintiff] can present evidence of

the state court's intent, the Bankruptcy Code's definition of 'domestic support obligation' does

not preclude a finding that all or part of the lump-sum award was intended as support regardless

of whether the 'debt is expressly so designated.' 11 U.S.C. § 101(14A)(B).").

Because Plaintiff seeks to introduce extraneous evidence to support her position on how

to interpret the Divorce Decree (a written document) under Kentucky law—specifically, to

determine which financial components of the Divorce Decree were intended as maintenance or

support—the Court must apply Kentucky's parol evidence rule.  *Consumer Lease Network, Inc.*

*v. Puckett*, Case No. 87-5398, 1988 U.S. App. LEXIS 1171, at *10 (6th Cir. Feb. 1, 1988)

(stating "[t]he parol evidence rule is a rule of substantive law" and, where a state's substantive

law controls an issue, that state's parol evidence rule also applies).  Typically, parol evidence is

used to explain the terms of a contract, but the Supreme Court of Kentucky has explained the

same principles apply to court orders and judgments:

> Although orders of the trial court are not contracts or statutory provisions, we
> believe that interpretative guidelines employed in such cases are instructive. …
>
> Interpreting court orders differs from that of statutes and contracts only to the
> extent that instead of construing the intent of the legislature or the intent of the
> parties, we must determine the intent of the ordering court. …   [I]n accordance
> with applicable principles of statutory and contract interpretation, we believe that

---

[15] Defendant also raised these objections at Judge Flatt's deposition.  [ECF No. 126-1 at 6, 10.]  Defendant did not
object at trial that the deposition testimony constituted inadmissible hearsay not subject to an exception.

> the legal significance of any particular trial court order is subject to interpretation by a reviewing court.  Where the language of the order is clear and unambiguous, we will construe the order according to its plain terms.  However, where the order is ambiguous and open to interpretation, we will endeavor to construe and effectuate the intent of the trial court.

*Crouch v. Crouch*, 201 S.W.3d 463, 465-66 (Ky. 2006) (footnote omitted).

Kentucky courts only use parol evidence to interpret a writing in limited circumstances. First, it may be used where an ambiguity exists in the instrument itself.  *See*, *e.g.*, *Hulda Schoening Family Trust v. Powertel/Kentucky Inc.*, 275 F. Supp. 2d 793, 796 n.3 (W.D. Ky. 2003) ("In Kentucky while nothing can be added to or taken from a written contract by parol evidence, ambiguities may be explained by parol." (citing *Stubblefield v. Farmer*, 165 S.W.2d 556 (Ky. 1942)); *Churchill Downs, Inc. v. NLR Entm't, LLC*, Civil Action No. 3:14-CV-166-H, 2014 U.S. Dist. LEXIS 71672, at *11-12 (W.D. Ky. May 23, 2014) ("statements of the parties are admissible whenever necessary to interpret ambiguous contract language, so long as the ambiguity is apparent on the face of the instrument itself." (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)).  But "in the absence of ambiguity a written instrument will be enforced strictly according to its terms." *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 106 (Ky. 2003) (citation omitted); *see also In the Interest of A.L.H.C.*, 49 S.W.3d 911, 918 (Tex. App. 2001) ("Where a court order is unambiguous, extrinsic evidence may not be considered to give a different effect from what is expressly stated in the order.").

"The existence of ambiguity is determined by examining the entire contract; its individual terms must be considered in light of the obligation as a whole." *Leslie v. LCA-Vision, Inc.*, No. 2009-CA-000899-MR, 2010 Ky. App. Unpub. LEXIS 524, at *5 (Ky. Ct. App. June 25, 2010); *see also Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) ("In determining whether contractual language is ambiguous, the contract must be construed as a whole." (quotation omitted)).  "To determine that an ambiguity exists, the court must first determine that

the contract provision is susceptible to inconsistent interpretations." *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. Ct. App. 1994).

When moving to admit Judge Flatt's deposition testimony in the face of Defendant's parol evidence objection, Plaintiff did not argue the Divorce Decree is ambiguous, while Defendant contended it is unambiguous.  [ECF No. 128 at 1:29:07-1:32:15; 1:38:05-1:43:33.] Upon a review of the entire Divorce Decree, the Court finds no ambiguity in its language. Absent ambiguity, the Court is not inclined to admit parol deposition testimony from a judge about their intent in drafting an order; Kentucky courts "speak[] only through written orders entered upon the official record." *Kindred Nursing Ctrs. Ltd. P'ship v. Sloan*, 329 S.W.3d 347, 349 (Ky. Ct. App. 2010).

Second, "while parol evidence may not vary a writing, it is admissible to identify the meaning of terms the parties used[.]" *Hulda Schoening Family Trust*, 275 F. Supp. 2d at 796 n.3; *see also New Ridge Mining Co. v. Smith*, No. 2002-CA-000085-MR, 2003 Ky. App. Unpub. LEXIS 914, at *4 (Ky. Ct. App. May 30, 2003) (stating parol evidence "is competent to identify the subject-matter of the contract, and to show what objects were, at the time, known by the terms used.").  Plaintiff did not explain how Judge Flatt's testimony clarified or provided context or meaning to any specific term in the Divorce Decree.

Third, "extrinsic evidence may add terms to an incomplete agreement where the written agreement is only partially integrated. … [The party seeking to introduce parol evidence] must show the [instrument] is only a partial integration and that the additional term is consistent with the [instrument's] language." *Churchill Downs, Inc.*, 2014 U.S. Dist. LEXIS 71672, at *12. Plaintiff did not argue the Divorce Decree is not a fully integrated instrument or that Judge Flatt's testimony offered an additional, consistent term to the Divorce Decree.

Defendant's parol evidence objection to the admission of Judge Flatt's deposition testimony is sustained.  As a result, the relevance objection is moot.

### C.    Plaintiff did not prove the lump sum payments related to Tri-State in the Divorce Decree were in the nature of support.

While Judge Flatt's deposition testimony is inadmissible parol evidence, Plaintiff still could have developed evidence at trial of the "intent" behind the financial obligations and property awards in the Divorce Decree to prove the lump sum payments ordered therein were "in the nature of support."  Stated differently, Plaintiff could have put on evidence of what the family court knew about the parties when it made its awards.  Plaintiff did not do this.

Defendant testified at trial for just over one hour.  [ECF No. 128 at 21:00-1:29:00.]  The testimony elicited from him established his operation of Tri-State prior to, during, and after the divorce, his failure to comply with the Restraining Order and to maintain records sufficient to determine the actual proceeds Tri-State earned during the divorce case, and his use of Tri-State-related funds during and after the divorce case to pay his personal expenses.  Notably, these facts already were established through joint stipulations.  [ECF No. 118 ¶¶ 3-5.]  What Plaintiff did not do was adduce relevant testimony from Defendant concerning the factors and related indicia used to determine whether the lump sum obligations in the Divorce Decree were "in the nature of support" for Plaintiff—or otherwise use other evidence to explain how those factors pertained to the lump sum and maintenance awards.

Defendant testified about his current ability to pay his household bills.  He stated he earns about $3,500 per month from Tri-State, that both he and his domestic partner contribute to paying their monthly bills, and that he could not pay all the bills without her contributions (she receives Social Security Disability payments).  Defendant admitted he lives less than a mile from

Plaintiff and stated he "would assume" she had similar monthly expenses, but also expressly stated he had "no idea what her costs are." [ECF No. 128 at 1:05:35-1:06:50.]

While the Divorce Decree was admitted into evidence at trial, Plaintiff did not go into its terms with Defendant in any depth. Defendant testified consistently with the Divorce Decree that Tri-State provided "the sole means and support for the family during most of the marriage." [Divorce Decree, 112-1 at 4, ¶ 8.] The document itself also reflects that the parties were married for 36 years and that they had "no infant children," but Plaintiff did not attempt to address at trial whether or how these facts bore on the property awards and maintenance obligation in the Divorce Decree. The Divorce Decree does not state that "marital fault" was considered in assessing a maintenance obligation, and Plaintiff did not explore this at trial, either.

The Divorce Decree discusses the maintenance obligation at length. It states Plaintiff "[l]acks sufficient property including marital property apportioned to her to provide for her reasonable needs and is unable to support herself through appropriate employment" and thus she "is entitled to receive maintenance from" Defendant. [Divorce Decree, 112-1 at 9, ¶ 12.] It also states the family court calculated a maintenance payment of $250 from Defendant to Plaintiff after weighing several factors:

> [a]fter considering the financial resources of [Plaintiff], including the martial [sic] property apportioned to her, and her ability to meet her needs independently, the time necessary to acquire sufficient education or training to enable [her] to find appropriate employment, the standard of living established during the marriage, the duration of the marriage, the age and the physical and emotional condition of [Plaintiff], and the ability of [Defendant] to meet his needs while meeting those of the spouse seeking maintenance.

[*Id.*] But Plaintiff did not flesh out this language at trial, such as by examining Defendant about it—or by testifying herself. Aside from what is recounted herein, Plaintiff offered no evidence of what the family court knew about these identified considerations when calculating the maintenance payment.

More specifically, Plaintiff did not introduce evidence about Plaintiff's and Defendant's respective education, professional training, or work skills and abilities, other than that Defendant operated Tri-State and Plaintiff did not.  Plaintiff did not offer evidence of any property or other financial resources in Plaintiff's or Defendant's possession before the divorce was filed, during the divorce proceedings, or post-divorce; thus, for example, this Court has no way to assess the import of the family court's award to Plaintiff in the Divorce Decree of "all of the furnishing in the marital residence and all other personalty of the Parties."  [*Id.* at 10 ¶ 5.]  Plaintiff presented no evidence about the value of the three parcels of real property noted in the Divorce Decree, including the 155.5 acre parcel awarded to Plaintiff and the 20 acre parcel ordered to be sold with the proceeds split between the parties.  [*Id.* at 4 ¶ 7, 10 ¶ 2.]  Plaintiff provided no proof of her income, expenses, or standard of living, at any time before or after Plaintiff and Defendant stopped cohabiting and their divorce proceedings began.  Thus, Plaintiff did not offer sufficient evidence to explain the disparity of earning power between Plaintiff and Defendant, her need for economic support and stability, and whether the lump sum awards pertaining to their joint business would have had the actual effect of providing necessary support to Plaintiff.

To assess if an obligation is "in the nature of" maintenance or support, a bankruptcy court also may consider the structure and language of the family court's decree and its inclusion of other lump sum or periodic payments.  *Bailey*, 2024 Bankr. LEXIS 866, at *30-31.  "Traditional state law indicia that are consistent with a support obligation . . . include . . . a label such as alimony, support, or maintenance in the decree [and whether payments] are contingent upon such events as death, remarriage, or eligibility for Social Security Benefits."  *Sorah*, 163 F.3d at 401.

The Divorce Decree's language and structure reveal the family court first divided the parties' property—real and personal—and then, separately, created an express "maintenance"

obligation of $250/month payable by Defendant to Plaintiff "for the remainder of her life, or until such time as [she] shall remarry or otherwise co-habit with another person." [Divorce Decree, 112-1 at 11 ¶ 6.]  In setting this monthly obligation, the family court stated it considered several of the *Calhoun* factors—meaning, it determined that $250/month in maintenance was an appropriate ongoing obligation under the facts.  [*Id*. at 9, ¶ 12.]  That this payment could terminate based on remarriage or cohabitation evinces a support obligation.  In contrast, the required lump sum payments are not similarly conditioned.

In sum, Plaintiff did not establish by a preponderance of the evidence at trial that the $160,000 and $45,000 obligations in the Divorce Decree are in the nature of support.  Defendant is entitled to a judgment in his favor on Plaintiff's § 523(a)(5) claim.

## Conclusion

The foregoing constitutes the Court's findings of fact and conclusions of law.  In reaching the conclusions found herein, the Court has considered all the evidence, exhibits, and arguments of counsel, regardless of whether the information is specifically referred to in this decision.  A separate Judgment shall be entered accordingly.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Douglas L. Lutz*
**Bankruptcy Judge**
**Dated: Thursday, September 19, 2024**
**(dll)**